UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case Number:

LUISA LONDONO,

      Plaintiff,

v.

AUTONATION INC., d/b/a

Mercedes Benz of Fort Lauderdale; and

GIFF HUMMELL, individually.

      Defendants.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

      Plaintiff, LUISA LONDONO, files this Complaint against Defendants, AUTONATION INC. d/b/a Mercedes Benz of Fort Lauderdale and GIFF HUMMELL, for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq., as amended, the Florida Civil Rights Act, Fla. Stat. § 760.10, et. seq. and for retaliation under the Family Medical Leave Act. In support of these claims she alleges the following:

INTRODUCTION

1. This is an action that involves claims of discrimination on the basis of sex and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq., as amended ("Title VII") and the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10, et. seq. against Defendant, Autonation Inc. ("Autonation"), and is brought by Plaintiff, Luisa Londono ("Plaintiff" or "Ms. Londono"), as a former employee of Defendant.

2.  This is also an action for retaliation in violation of the Family Medical Leave Act against both Defendants.

PARTIES

3.  Ms. Londono, was, at all relevant times to this action, a resident of Miami, Florida.

4.  At all times relevant to this action, Autonation employed Ms. Londono as a Director.  She was an employee within the meaning of Title VII and the Florida Civil Rights Act of 1992.

5.  At all times relevant to this action, Plaintiff was considered an eligible employee under the FMLA meaning that she was employed for at least 12 months by Defendants and worked over 1250 hours in the previous 12 months.

6.  During the relevant time period of this complaint, Plaintiff was pregnant and entitled to FMLA leave to care for the birth of her child.

7.  Autonation is a foreign profit corporation organized in the State of Delaware. Though a national company, the local branch where Plaintiff was employed is located at Fort Lauderdale.

8.  Giff Hummell was/is the General Manager of the corporate Defendant's Fort Lauderdale location beginning in early 2016.   Mr. Hummell was Plaintiff's supervisor during the relevant time period of this complaint. Mr. Hummell makes all personnel decisions within the store and is directly responsible for the supervison, discipline, hiring and firing of the staff of the store.  Plaintiff does not have these responsibilities as they all go through Defendant Hummell.

9.  Mr. Hummell is considered an employer of Plaintiff under the FMLA.  Mr. Hummell is a person who acted both directly and indirectly in the interest of the the corporate Defendant as it concerns Plaintiff.  He was her supervisor.

10. During all times relevant to this Complaint, the Defendants employed more than fifteen employees.

11. During all times relevant to this complaint, Defendants employed more than 50 employees within a 75 mile radius of Plaintiff's worksite.

12. During all times relevant to this complaint, Defendants engaged in commerce and/or as an industry affecting commerce.

13. Plaintiff and the corporate Defendant are subject to Title VII.

14. Plaintiff and the corporate Defendant are subject to the Florida Civil Rights Act.

15. Plaintiff and both Defendants are subject to the FMLA.

JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this matter under its federal question jurisdiction because it arises from federal law, specifically, Title VII. This Court has supplemental jurisdiction over the Florida state law claims pursuant to 28 U.S.C. § 1367 because these state law claims are significantly related to the claims arising from Federal law, as they arise from the same set of operative facts. Further, these state law claims do not raise complex or novel questions of state law and do not predominate over the Federal claims.

17. This Court has personal jurisdiction over Defendants because they deliberately reach into the State of Florida to complete their business, evidenced by their numerous offices, employees, and contracts in the State.

18. Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391 because the acts complained of occurred in this district, specifically, Miami-Dade County.

19. On or around April 2017, Plaintiff submitted a charge of discrimination against the corporate Defendant, alleging that the corporate Defendant discriminated against

her on the basis of her sex, with the Equal Employment Opportunity Commission ("EEOC"). The EEOC sent Ms. Londono a "Right to Sue" letter based upon this charge on March 13, 2018.

20. Fewer than ninety (90) days have passed since Plaintiff received this Right to Sue Letter. All conditions subsequent to filing suit have been satisfied.

GENERAL ALLEGATIONS REGARDING PLAINTIFF'S DISCRIMINATION CLAIMS

21. The corporate Defendant employed Plaintiff from December 2012 until May 2017. Throughout her employment, Plaintiff had an excellent work record.

22. Plaintiff was promoted to Director of corporate Defendant's Pompano location in September 2015. Plaintiff succeeded at the position and eventually interviewed for the same but bigger position in the Fort Lauderdale location. The interview was held with Defendant Hummell. Plaintiff was hired for the position in April 2016. She was to be in charge of 4 established managers.

23. As a Director, Plaintiff is supposed to make sure processes are followed to get to a final price and offered financing options. However, gradually these duties were usurped from her by Defendant Hummell, approving deals without her knowledge or input. Plaintiff does not supervise other employees and is not capable of disciplining or managing them in anyway. These responsibilities fall to the General Manager, Defendant Hummell.

24. Within a few months of the new position, 3 out of the 4 of these established managers were replaced by new, inexperienced managers. These managers will

still under their probationary orientation period[1] or just beyond it during the relevant time period.  Additionally, there was heavy turnover with associates.

25. Despite the heavy changes, Plaintiff performed well over her first several months, earning praise from employees and Defendant Hummell.  From April until late August 2016, Defendant Hummell included Plaintiff in meetings, asked for her opinion on matters, and showed support in front of the rest of the staff.

26. In September of 2016, Plaintiff told Defendant Hummell that she was pregnant, with an official announcement to the company a few days later.

27. Almost immediately thereafter, Defendant Hummell's demeanor towards Plaintiff changed.  She was not included in many meetings, her opinion was no longer requested, and she was contradicted publicly in front of the staff.  Her requests for meetings with the staff were denied by Defendant Hummell.

28. In October, Plaintiff was given a coaching assessment plan for the first time in a meeting with Defendant and several other members of HR and management.  Part of the assessment was a performance plan.  Plaintiff immediately stated that the performance plan was unrealistic and purposely designed to set her up to fail.  The numbers matched the height of the previous Director's sales with the benefit of a veteran team with more resources and experience.  It had taken approximately 18 months for the previous director to reach these heights.  She stated that her brand new team without the benefit of experience or any familiarity with the system would never be able to do those numbers.  She also stated that the previous Director had the benefit of the support from his general manager, which she no

---

[1] This period is the first 3 months of employment

longer had with Defendant Hummell since she became pregnant.  She offered a counter of slightly lesser numbers with optimism she could get that much from her team.  These revised numbers would still be the highest in the market.  The meeting room agreed to the revised performance numbers.

29. Following the meeting, Plaintiff was told by members of the staff that Defendant Hummell did not like the idea of her being pregnant and that he was trying to get rid of her because she was going on maternity leave.  Another manager told Plaintiff that the plan was to eventually demote her.

30. A few days following the meeting, an "addendum" (in the form of a write-up) to the performance plan was issued adding to her new performance goals.

31. On November 8, 2016 Plaintiff was given another assessment for similar reasons to the original assessment.  In this meeting, Plaintiff complained of the obstacles in her way of completing the performance plan.  As a director, she had no authority over the sales managers and other staff.  Their shortcomings, inconsistencies, behavior, and performance were not being regulated by the person who was their supervisor, General Manager Gif Hummell.  She was told she had 15 days to fix everything.  She responded by asking what would happen if she did show improvement but missed a single bullet point, adding that Defendant Hummell still wanted to fire her due to her pregnancy.  She was told that they would explore other options like demotion.  Plaintiff was flabbergasted at the admission of Defendant's intention to take her out of the Director position seemingly no matter what.  She was then told to just fix one thing at a time.

32. In both meetings, Plaintiff complained that she was being left out of the sales approval process and that Defendant Hummell was approving deals without her

input and/or knowledge of the transaction.  This was directly affecting her performance and would be an impregnable barrier to her completing her performance plan.

33. After the meeting, Plaintiff spoke with Joe Brahler, the Customer Financial Services Development Manager, who was in both performance meetings, and told him that she was being set up to fail and retaliated against because she was pregnant.  She also further explained that it was Defendant Hummell's lack of process and procedure that was leading her to not achieve sales goals.  Brahler assured Plaintiff that she had nothing to worry about as long as she showed improvement and to take it one thing at a time.

34. Following the meeting, Plaintiff insisted on a staff meeting so that she could address her needs with the staff in order to achieve the performance plan.  The meeting was granted.  However all requests for follow up meetings needed to ensure compliance with her directives were denied by Defendant Hummell.

35. Joe Brahler seemingly listened to the complaints of Plaintiff and spent a week at the store.  He witnessed the breakdown of process and procedure by Defendant Hummell.  He witnessed Defendant Hummell segregate Plaintiff from deals and sales with the sales team that are supposed to go through the Director.  To alleviate these issues, Brahler instructed the store to use a new Sales Checklist he had created.  Defendant Hummell refused to enact the Sales Checklist despite it coming from Mr. Brahler.

36. At this point, Defendant Hummell ceased all interaction with Plaintiff.  He continued to allow deals to be made that ignored profitability and were solely focused on volume.  These transactions were seen as suspicious and were done

despite Plaintiff regularly advising against making any transactions that would put the store at risk.  This directly reflected on Plaintiff's performance despite her having nothing to do with the transactions.

37. At this point, in order to do her best to achieve the unachievable performance plan, Plaintiff was working 10-11 hour days.

38. On November 22, 2016, an employee of Defendant disagreeing with Plaintiff's instruction loudly yelled "fuck you" and "do your fucking job" to Plaintiff in front of other coworkers.  Attempting to make the best of the situation, Plaintiff addressed the employee privately despite the chaos of the scene.  Defendant Hummell wrote up Plaintiff for addressing the employee in this manner while he refused to give any harsh discipline to the employee despite the clear insubordination that is normally not tolerated.  Defendant Hummell then sent Plaintiff home for the day to only return when contacted upon resolving the issue.

39. On November 23, 2016 Plaintiff had a doctor's appointment.  She was advised that due to increased stress she needed to rest.  Her doctor advised her to only work 40 hour weeks.

40. She presented her doctor's instructions to Defendant Hummell.  Defendant Hummell told her that she did not need to worry about the office so much and that she had to do what was best for her health and that of her child.  Defendant Hummell demoted her a few days later.

41. Defendant Hummell asked Plaintiff to meet him at Defendant's location in Weston.  Plaintiff believed she had exceeded her performance numbers and was not worried considering her most recent conversation with Defendant Hummell. Instead, she was greeted by Defendant Hummell and an HR representative with a

write-up. Defendant Hummell claimed that Plaintiff had made her improvements, but one of her performance numbers came in below the required number. Apparently sales had been above the number, but chargebacks caused the number to go below. Additionally, she was at her other valuations. All of her numbers were required to be far above that of the other dealerships in the market. So, though she was performing better than all of her competition despite the internal handicaps, her performance plan still caused her to fail.

42. On December 6, 2016 Plaintiff was demoted from Finance Director to Finance Manager and given options to go to Chevrolet of Calle Ocho, Chevrolet of Pembroke Pines, or to resign. This was despite there being other openings in Mercedes branded stores. There were also finance manager positions available in the Fort Lauderdale store. However, it was clear that Defendant Hummell wanted her out of his store. This resulted in a severe loss in pay. Plaintiff chose the Calle Ocho location. Upon the relocation, Plaintiff gave her 40 hour medical note to her direct supervisor. The direct supervisor told Plaintiff that she was to give her a regular schedule (more than 40 hours) despite the note and that the order came from higher up.

43. Plaintiff went on FMLA leave on January 14, 2017. The last few weeks were spent doing increased work of more than 40 hours per week, despite the doctor's note.

44. Plaintiff resigned her employment in May of 2017 before returning from leave. Plaintiff was constructively terminated as she had no future in the company due to the retaliatory actions of Defendant Hummell.

45. Plaintiff filed her case with the Equal Employment Opportunity Commission in April 2017.

## COUNT 1
## SEX/PREGNANCY DISCRIMINATION IN VIOLATION OF TITLE VII
## AGAINST DEFENDANT AUTONATION

46. Plaintiff re-alleges the paragraphs 1-45 as if fully set forth in this Count.

47. At all relevant times Defendant was an employer who employed more than 15 employees as required by 42 U.S.C. § 2000e(b).

48. At all relevant times Defendant employed Plaintiff within the meaning of 42 U.S.C. § 2000e(f).

49. Defendant acted in the above mentioned manners with the intent to discriminate against Plaintiff on the basis of her sex and due to her pregnancy.

50. Defendant wrote up Plaintiff several times and implemented an unreasonably difficult performance plan designed for Plaintiff to fail.  This plan ultimately resulted in Plaintiff's demotion.

51. Plaintiff's sex and her pregnancy were the legal causes for Defendant's decision to discipline Plaintiff, resulting in the performance plan that ultimately led to her demotion.

52. Defendant knowingly and intentionally discriminated against Plaintiff on the basis of her sex in violation of Title VII.

53. This violation of Title VII provides to Plaintiff back pay, front pay, attorneys' fees and costs, or any other equitable relief deemed just pursuant to 42 U.S.C. §2000e-5 and compensatory and/or punitive damages pursuant to 42 U.S.C. § 1981(a).

## COUNT 2
## SEX/PREGNANCY DISCRIMINATION
## IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
## AGAINST DEFENDANT AUTONATION

54. Plaintiff re-alleges paragraphs 1-45 as if fully set forth in this Count.

55. At all relevant times Defendant was an employer who employed more than 15 employees as required by Fla. Stat. § 760.02.

56. At all relevant times Defendant employed Plaintiff within the meaning of the Florida Civil Rights Act of 1992, Fla. Stat. § 760.01 et. seq.

57. Defendant acted in the above mentioned manners with the intent to discriminate against Plaintiff on the basis of her sex and due to her pregnancy.

58. Defendant wrote up Plaintiff several times and implemented an unreasonably difficult performance plan designed for Plaintiff to fail.  This plan ultimately resulted in Plaintiff's demotion.

59. Plaintiff's sex and her pregnancy were the legal causes for Defendant's decision to discipline Plaintiff, resulting in the performance plan that ultimately led to her demotion.

60. Defendant knowingly and intentionally discriminated against Plaintiff on the basis of her sex in violation of Fla. Stat. § 760.01 et. seq.

61. This violation of the Florida Civil Rights Act of 1992 provides to Plaintiff back pay, front pay, attorneys' fees and costs, or any other equitable relief deemed just pursuant to Fla. Stat. § 760.11.

## COUNT 3
## SEX/PREGNANCY RETALIATION IN VIOLATION OF TITLE VII AGAINST DEFENDANT AUTONATION

62. Plaintiff re-alleges the paragraphs 1-45 as if fully set forth in this Count.

63. At all relevant times Defendant was an employer who employed more than 15 employees as required by 42 U.S.C. § 2000e(b).

64. At all relevant times Defendant employed Plaintiff within the meaning of 42 U.S.C. § 2000e(f).

65. Defendant acted in the above mentioned manners with intent to retaliate against Plaintiff on the basis of her complaints of discrimination based on her sex and due to her pregnancy.

66. Plaintiff made several complaints about Defendant discriminating against her based on her pregnancy.  These complaints led to more assessment plans and ultimately her demotion.

67. Plaintiff's complaints about pregnancy discrimination were the legal causes for Defendant's retaliatory decision to further discipline Plaintiff, ultimately leading to her demotion.

68. Defendant knowingly and intentionally retaliated against Plaintiff on the basis of her complaints of pregnancy discrimination in violation of Title VII.

69. This violation of Title VII provides to Plaintiff back pay, front pay, attorneys' fees and costs, or any other equitable relief deemed just pursuant to 42 U.S.C. §2000e-5 and compensatory and/or punitive damages pursuant to 42 U.S.C. § 1981(a).

**COUNT 4**
**SEX/PREGNANCY RETALIATION**
**IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT**
**AGAINST DEFENDANT AUTONATION**

70. Plaintiff re-alleges paragraphs 1-45 as if fully set forth in this Count.

71. At all relevant times Defendant was an employer who employed more than 15 employees as required by Fla. Stat. § 760.02.

72. At all relevant times Defendant employed Plaintiff within the meaning of the Florida Civil Rights Act of 1992, Fla. Stat. § 760.01 et. seq.

73. Defendant acted in the above mentioned manners with intent to retaliate against Plaintiff on the basis of her complaints of discrimination based on her sex and due to her pregnancy.

74. Plaintiff made several complaints about Defendant discriminating against her based on her pregnancy.  These complaints led to more assessment plans and ultimately her demotion.

75. Plaintiff's complaints about pregnancy discrimination were the legal causes for Defendant's retaliatory decision to further discipline Plaintiff, ultimately leading to her demotion.

76. Defendant knowingly and intentionally retaliated against Plaintiff on the basis of her complaints of pregnancy discrimination in violation of Fla. Stat. § 760.01 et. seq.

77. This violation of the Florida Civil Rights Act of 1992 provides to Plaintiff back pay, reinstatement, attorneys' fees and costs, or any other equitable relief deemed just pursuant to Fla. Stat. § 760.11.

**COUNT 5**
**SEX/PREGNANCY DISCRIMINATION/RETALIATION**
**IN VIOLATION OF TITLE VII CAUSING CONSTRUCTIVE TERMINATION**
**AGAINST DEFENDANT AUTONATION**

78. Plaintiff re-alleges the paragraphs 1-45 as if fully set forth in this Count.

79. At all relevant times Defendant was an employer who employed more than 15 employees as required by 42 U.S.C. § 2000e(b).

80. At all relevant times Defendant employed Plaintiff within the meaning of 42 U.S.C. § 2000e(f).

81. Defendant acted in the above mentioned manners with the intent to discriminate and retaliate against Plaintiff on the basis of her sex and due to her pregnancy.

82. Defendant wrote up Plaintiff several times and implemented an unreasonably difficult performance plan designed for Plaintiff to fail.  This plan ultimately resulted in Plaintiff's demotion.

83. Plaintiff made several complaints regarding the pregnancy discrimination that was occurring.  These complaints only lead to more assessment plans, more elements to her performance plan, and more stress.

84. Plaintiff was forced to end her employment with Defendant due to their institutional promotion of pregnancy discrimination.  Instead of investigating and/or addressing Plaintiff's claims of discrimination and retaliation, Defendant continued to allow an abusive and hostile environment to flourish; leading to the rewarding of her abuser, Defendant Hummell.

85. A reasonable person in this environment would be forced to resign under these conditions due to the lack of institutional action to prevent further abuse.

86. Defendant's inaction to prevent further discrimination and retaliation, combined with Defendant's rewarding of her abuser were the legal causes for Plaintiff's inability to continue working for Defendant.  This is constructive termination.

87. Defendant knowingly and intentionally discriminated and retaliated against Plaintiff on the basis of her sex/pregnancy in violation of Title VII.

88. This violation of Title VII provides to Plaintiff back pay, front pay, attorneys' fees and costs, or any other equitable relief deemed just pursuant to 42 U.S.C. §2000e-5 and compensatory and/or punitive damages pursuant to 42 U.S.C. § 1981(a).

**COUNT 6**

### SEX/PREGNANCY DISCRIMINATION/RETALIATION
### IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
### CAUSING CONSTRUCTIVE TERMINATION
### AGAINST DEFENDANT AUTONATION

89. Plaintiff re-alleges paragraphs 1-45 as if fully set forth in this Count.

90. At all relevant times Defendant was an employer who employed more than 15 employees as required by Fla. Stat. § 760.02.

91. At all relevant times Defendant employed Plaintiff within the meaning of the Florida Civil Rights Act of 1992, Fla. Stat. § 760.01 et. seq.

92. Defendant acted in the above mentioned manners with the intent to discriminate and retaliate against Plaintiff on the basis of her sex and due to her pregnancy.

93. Defendant wrote up Plaintiff several times and implemented an unreasonably difficult performance plan designed for Plaintiff to fail. This plan ultimately resulted in Plaintiff's demotion.

94. Plaintiff made several complaints regarding the pregnancy discrimination that was occurring. These complaints only lead to more assessment plans, more elements to her performance plan, and more stress.

95. Plaintiff was forced to end her employment with Defendant due to their institutional promotion of pregnancy discrimination. Instead of investigating and/or addressing Plaintiff's claims of discrimination and retaliation, Defendant continued to allow an abusive and hostile environment to flourish; leading to the rewarding of her abuser, Defendant Hummell.

96. A reasonable person in this environment would be forced to resign under these conditions due to the lack of institutional action to prevent further abuse.

97. Defendant's inaction to prevent further discrimination and retaliation, combined with Defendant's rewarding of her abuser were the legal causes for Plaintiff's inability to continue working for Defendant.  This is constructive termination.

98. Defendant knowingly and intentionally discriminated and retaliated against Plaintiff on the basis of her sex/pregnancy in violation of Fla. Stat. § 760.01 et. seq.

99. This violation of the Florida Civil Rights Act of 1992 provides to Plaintiff back pay, front pay, attorneys' fees and costs, or any other equitable relief deemed just pursuant to Fla. Stat. § 760.11.

## COUNT 7 FMLA RETALIATION
## AGAINST DEFENDANT AUTONATION

100.    Plaintiff re-alleges paragraphs 1-45 as if fully set forth in this Count.

101.    At all relevant times Defendant was an employer who employed more than 50 employees within a 75 mile radius of Plaintiff's workplace as required by 29 U.S.C. §2611(2)(B)(ii).

102.    At all relevant times Defendant employed Plaintiff within the meaning of the FMLA §2611 et seq.

103.    Plaintiff was entitled to leave under the FMLA as she was expecting the birth of her child. Plaintiff gave due and proper notice of her impending need for FMLA leave. Shortly after notice was given, Defendant disciplined Plaintiff by giving her several assessment plans and implementing an unreasonably difficult performance plan.  This ultimately led to her demotion.

104.    Under 29 U.S.C. §2615(a), it is unlawful for an employer to (1) "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA and (2) "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by" the FMLA.

105.     Plaintiff's request for FMLA leave was the legal cause for Defendant's decision to demote Plaintiff.

106.     Defendant knowingly and intentionally discriminated against Plaintiff on the basis of her request for FMLA leave in violation of 29 U.S.C. §2615 et. seq.

107.     This violation of the FMLA provides to Plaintiff lost wages, interest, liquidated damages, attorneys' fees and costs, and/or any other equitable relief deemed appropriate, including employment, reinstatement, and promotion pursuant to 29 U.S.C. §2617.

**COUNT 8 FMLA RETALIATION**
**AGAINST DEFENDANT GIFF HUMMELL**

108.     Plaintiff re-alleges paragraphs 1-45 and 101-107 as if fully set forth in this Count.

109.     At all relevant times Defendant was an employer who employed more than 50 employees within a 75 mile radius of Plaintiff's workplace as required by 29 U.S.C. §2611(2)(B)(ii).

110.     At all relevant times Defendant employed Plaintiff within the meaning of the FMLA §2611 et seq.

111.     Plaintiff was entitled to leave under the FMLA as she was expecting the birth of her child. Plaintiff gave due and proper notice of her impending need for FMLA leave. Shortly after notice was given, Defendant was responsible for disciplining Plaintiff by giving her several assessment plans and implementing an unreasonably difficult performance plan.  This ultimately led to her demotion.

112.     Under 29 U.S.C. §2615(a), it is unlawful for an employer to (1) "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided

under" the FMLA and (2) "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by" the FMLA.

113.     Plaintiff's request for FMLA leave was the legal cause for Defendant's decision to demote Plaintiff.

114.     Defendant knowingly and intentionally discriminated against Plaintiff on the basis of her request for FMLA leave in violation of 29 U.S.C. §2615 et. seq.

115.     This violation of the FMLA provides to Plaintiff lost wages, interest, liquidated damages, attorneys' fees and costs, and/or any other equitable relief deemed appropriate, including employment, reinstatement, and promotion pursuant to 29 U.S.C. §2617.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief as to Counts 1-6:

- the Court find that Defendant violated Title VII and the Florida Civil Rights Act of 1992, intentionally, and in bad faith;

- the Court award Plaintiff back pay, front pay, attorneys' fees and costs, and any other equitable relief deemed just pursuant to 42 U.S.C. § 2000e-5 and compensatory and/or punitive damages pursuant to 42 U.S.C. § 1981(a);

- the Court award Plaintiff back pay, front pay, compensatory damages, punitive damages, attorneys' fees and costs, or any other equitable relief deemed just pursuant to Fla. Stat. § 760.11.

WHEREFORE, Plaintiff prays the following relief as to Count 7 and 8:

- the Court find that Defendants violated §2615 of the FMLA intentionally and in bad faith;

- the Court award Plaintiff lost wages, interest, liquidated damages, attorneys' fees and costs, and/or any other equitable relief deemed appropriate, including employment, reinstatement, and promotion pursuant to 29 U.S.C. §2617.

DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint and on all other issues so triable.

Dated: April 24, 2018.

Respectfully submitted,

By:___/s/ R. Edward Rosenberg
R. Edward Rosenberg, Esquire
Fla. Bar No.: 88231
Email: rer@sorondorosenberg.com
Sorondo Rosenberg Legal PA
1825 Ponce de Leon Blvd. #329
Coral Gables, FL 33134
T: 786.708.7550
F: 786.204.0844

Attorney for Plaintiff